**TEXAS EMPLOYERS INSURANCE ASSOCIATION**

v.

**Leroy JACKSON.**

**Civ. A. No. B–85–776–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 1, 1985.

Royce Till/Reagan Simpson, Fulbright & Jaworski, Houston, Tex., for plaintiff.

Richard Schechter, Schechter, Eisenman & Solar, Houston, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

In this action, the plaintiff, Texas Employer Insurance Association (TEIA) seeks a declaratory judgment and a permanent injunction against the defendant, Leroy Jackson (Jackson) from continuing to assert and prosecute his suit against TEIA in the District Court of Jefferson County. For the reasons explained herein, plaintiff's Motion for Injunctive Relief is GRANTED.

The plaintiff was the insurance carrier for Gulfport Shipbuilding Company, and provided coverage against liability arising from claims filed under the Longshore and Harbor Workers' Compensation Act (referred to as the "LHWCA" or the "Act."), 33 U.S.C. 901 *et seq.* At all times material to this action, Gulfport Shipbuilding Company was Jackson's employer subject to the terms of the LHWCA, but it is not a party in the instant litigation.

On July 13, 1978, Leroy Jackson, the defendant, was injured in the course and scope of his employment with Gulfport when he fell while working on a barge located in navigable waters. Jackson properly notified his employer of his injury and the plaintiff initiated payments of temporary total disability benefits. Jackson filed a formal claim for LHWCA compensation in July 1983, at which time the plaintiff controverted the claim. The plaintiff stopped paying compensation benefits in April 1983. After an informal conference with a representative of the Department of Labor, TEIA resumed compensation payments in July 1983. The plaintiff again terminated compensation payments in September 1983 after the defendant was examined by a physician of his own choice.

On May 3, 1984, the claim came on for formal hearing before the Honorable Ellin M. O'Shea, Administrative Law Judge. On September 14, 1984, Judge O'Shea issued a decision and order awarding the defendant compensation for temporary total disability, total permanent disability, attorney's fees and interest on all past unpaid amounts. The decision was not appealed and therefore became final.

The defendant filed an action in the District Court of Jefferson County, Texas, on June 7, 1984, asserting seven causes of action arising from the plaintiff's alleged bad faith handling and termination of the LHWCA compensation payments. The causes of action alleged by Jackson are: (1) violation of the Texas Insurance Code; (2) violation of the Texas Business and Commercial Code; (3) bad faith claims practices under Texas state law; (4) fraud under Texas state law; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) wilful and wanton disregard for the health, safety and welfare of others.

Plaintiff has brought this action pursuant to the Declaratory Judgment Act,[1] seeking a determination that the manner in which a LHWCA claim is handled is exclusively controlled by the LHWCA, that the exclusive jurisdiction of all such claims is vested in the United States Department of Labor and in the United States federal court system, and that the award issued by Judge O'Shea is res judicata as to such claims. In addition to seeking a declaratory judgment to such effect, plaintiff further prays for an injunction to enjoin the defendant Jackson from pursuing the state court action.

The defendant contends that the LHWCA has not pre-empted Texas law in this area, that the doctrine of res judicata is inapplicable, that an injunction would not comply with the Anti-Injunction Act,[2] and that this court should abstain from ruling on plaintiff's motions.

This court, after hearing the parties' arguments and carefully considering the law

---

1. 28 U.S.C. 2201, 2202.

2. 28 U.S.C. 2283.

and evidence of this case, has concluded that plaintiff's motion for injunctive relief should be granted and that the defendant should be permanently enjoined from proceeding with his action in state court.

## I. PRE–EMPTION OF STATE LAW

■■■ This court adopts the position that the LHWCA has pre-empted state law regarding actions for bad faith handling of LHWCA claims. It is well established that Congress may pre-empt an area of law under the Supremacy Clause of the U.S. Constitution. Pre-emption may be express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 64 (1977). Absent explicit pre-emptive language, Congress' intent to supercede state law may be inferred when the scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). This court concludes that the Act would pre-empt Texas law in this case on any of these three bases.

■■■ Section 5[3] of the LHWCA provides that the exclusive liability of an employer covered by the Act is the payment of the benefits, costs and penalties provided for therein. Section 35[4] of the Act places an insurance carrier in the same position as the employer. While there is no provision which states, "This Act pre-empts all state law in this area," these provisions are nevertheless adequate to find that Congress expressly pre-empted the field by providing the exclusive remedy against employers and carriers as to actions arising under the LHWCA. The language providing that the Act is the exclusive remedy against an employer or carrier is a sufficiently explicit basis to pre-empt conflicting state law.

■■■ Even if Congress had not explicitly expressed its intent to pre-empt the area of compensation for these employees, the Congressional scheme of federal regulation is so pervasive as to warrant the inference that Congress intended to supercede state law in this area. This intent is discernible from the comprehensive federal nature of the provisions of the Act. Section 39[5] of the LHWCA places the primary duty of administering the Act on the Secretary of Labor. Appeals of compensation orders are handled by the Benefits Review Board of the Department of Labor and then by the Court of Appeals of the United States.[6] The United States District Courts are the exclusive agent to enforce final orders.[7] There are no provisions which allow state intervention at any stage of the process. It is clear from the terms of the Act that the sole cause of action in these cases is federal in nature and allows for no state supervision.

It is also clear that regulation by the State of Texas which the defendant seeks would be an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. One of the apparent objectives of Congress in enacting the LHWCA was to provide uniform protection to certain classes of employees. This purpose would be hampered if every state were able to freely amend the Act and require varying standards of conduct by the parties.

---

3. 33 U.S.C. § 905.

4. 33 U.S.C. § 935.

5. 33 U.S.C. § 939.

6. 33 U.S.C. § 921.

7. 33 U.S.C. §§ 918 and 921(d).

Another apparent objective of Congress was to provide an expedited procedure to enabled the covered employees to recover adequate compensation with minimal legal entanglements. The employee has an easier burden of proof to establish liability, and the employer and its carrier are protected from actions brought from outside the scope of the LHWCA. The protection of each party would be lost if they had to contemplate posturing for advantageous positions in later law suits which might arise from the handling of such claims.

 It is apparent that under any of the three tests for pre-emption set out above, Congress intended that the LHWCA supercede any conflicting state law regarding the handling of claims and payments under the Act. The LHWCA does provide remedies for late payment and non-payment of installments,[8] but does not distinguish between good faith and bad faith non-payment. The only allowable justification for non-payment of an installment is that there is no liability. Judge O'Shea was apparently aware of the remedies for non-payment in that she applied the penalties provided in the Act, in essence, ruling that the plaintiff wrongfully withheld the payment of the compensation. A carrier's good faith belief that it is not liable under the LHWCA is not sufficient grounds to protect it from the penalties provided for if liability is later found. The Act also provides no requirement that good faith be exercised controverting a claim or delaying payment thereon. Good faith simply does not play a part in the LHWCA scheme as far as the controverting of claims.[9] In pre-empting state law in this area, Congress has set aside state causes of action for bad faith claims handling.

This court's conclusion is reinforced by the Supreme Court's ruling in *Allis-Chalmers Corp. v. Lueck,* —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Lueck,* the Supreme Court was extremely hesitant to allow a state court to decide the scope of federally created rights and obligations. The Court held that a state law requirement of good faith in payments of compensation may not be used to expand the applicable labor relations law governing contracts and that the state law was preempted by federal law. The basis of this opinion was that the tort was rooted in contract law. In the present case, the violations alleged are rooted in federal compensation law. But for the federal compensation law, there could be no mishandling of the claim since there could be no claim.

That the LHWCA pre-empts state law is further supported by the Supreme Court's ruling in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), wherein the Court held that New York's Human Rights Law was pre-empted to the extent that it prohibited practices that were lawful under federal law. The only limitations the Court placed on pre-emption in that case were due to the fact that the federal statute in question was self-limiting and contemplated inclusion of state programs. In the present case, the federal statute is neither self-limiting or dependent upon state support in order to effectuate its goals.

An action in the state courts of Texas in this case would necessarily and improperly limit the scope of the LHWCA. The Act makes no reference to incorporating any Texas insurance standards. To require a standard of good faith would be to substitute a higher standard than that set out in the Act itself. As mentioned, the federal standard of conduct in an LHWCA claim does not include good faith but the Act does provide penalties for the wrongful withholding of compensation. A state court should not be allowed unilaterally to

---

8. 33 U.S.C. §§ 914 and 938(b).

9. It is worth noting that in the 1984 amendments to the LHWCA, Pub.L. 98–426, 98 Stat. 1639, Congress added a bad faith clause to the act, § 31[c], but left the penalty provisions for late payment and non-payment of installments as they were. While the amendments are not applicable in the present case, they are indicative that Congress was aware of bad faith actions by the parties and intended to control them through the LHWCA. *See also* § 38(b).

amend the Act in ways that Congress did not intend. This is so because the conduct complained of arises from the alleged mishandling of a federally created right, as opposed to a state statutory or common law right. There can be no escaping the conclusion that except for the federally created rights and duties there could be no mishandling of compensation. Since the right to compensation comes from the LHWCA, the right to damages for mishandling the compensation also arises from the Act.

The defendant asserts that under the McCarran Act,[10] the regulation of the insurance business is to be left to the states.[11] Further, the McCarran Act provides that no Act of Congress shall be construed to invalidate, impair or supercede any law enacted by any State for the purpose of regulating the business of insurance unless such Act specifically relates to the business of insurance.[12] This court holds that for the purposes of the McCarran Act, the LHWCA specifically relates to the business of insurance and may therefore supercede any Texas regulation of the insurance industry contrary to the terms of the act. The carrier is subject to the same duties and liabilities as the employer,[13] which amounts to detailed and pervasive regulation. Additionally, the carrier must meet further requirements in its policies and contracts.[14] One is forced to conclude that the LHWCA does govern the actions and responsibilities of insurance carriers to such a degree that it specifically relates to the business of insurance.

The defendant also asserts the proposition that *Allis-Chalmers Corp. v. Lueck, supra,* does not apply to the facts of this litigation. While that case is not in all ways directly in point, the facts in *Lueck* and this case are similar and the rationale in *Lueck* is enlightening. The question in both cases is whether state law may require *good faith handling* of compensation claims when the *right* to compensation is federally created. Having disposed of the issue as to whether the LHWCA regulates the business of insurance, the court turns to the contention that *Lueck* should not apply to a state imposed duty as opposed to a contractually imposed duty. While the Supreme Court expressly reserved judgment on that very issue, the argument for preemption appears even stronger than in *Lueck.* In that case, the state tort action involved interpretation of a private contract, the particulars of which were not prescribed by federal law. In the present action, the proposed tort claim would require the State of Texas to go to determine what "good faith" and "bad faith" mean in the context of an LHWCA claim. In essence, this means that Texas would determine what are the obligations of a carrier or employer under the Act. This could very well result in a misapplication of LHWCA standards, either by making additional requirements not found in the Act or by diluting the standards which the Act requires.

The defendant holds out the case *Martin v. Travelers Insurance Company,* 497 F.2d 329 (1st Cir.1974), as support for his contention that he should be able to file a lawsuit in state court for the carrier's alleged bad faith conduct in administering LHWCA compensation payments. This court does not find *Martin* persuasive on several grounds. That case appears to be alone in its conclusion as to the pre-emptive effect of the LHWCA. Not only is there no authority in the text of the opinion which supports the conclusion, but the case appears not to have been cited as authority by any other federal court. Perhaps more tellingly, it is noted that since *Martin* has been decided, the Supreme Court has issued *Lueck* and other cases which strongly indicate *Martin* may have been decided differently today.

---

**10.** 15 U.S.C. §§ 1011–1015.

**11.** 15 U.S.C. § 1012(a).

**12.** 15 U.S.C. § 1012(b).

**13.** 33 U.S.C. § 935.

**14.** 33 U.S.C. § 936.

Moreover, it is noted that the action in *Martin* was commenced in federal district court as opposed to state court. Further, the action appears to have been predicated on the LHWCA with only the remedy to come from state law. In the instant case the defendant wishes to proceed in state court with causes of action arising from state statutory or common law and with state remedies interspersed and intermingled with LHWCA causes of action. These differences in approach remove the present case from the *Martin* holding, however authoritative it might be.

Having weighed the arguments of counsel and considered the effects and implications of its ruling, this court is persuaded that Congress did indeed intend for the LHWCA to pre-empt any state causes of action arising from the handling of compensation payments under the Acts. Therefore, the recovery of the defendant against the carrier is limited to that provided for by the Act itself.

## II. RES JUDICATA

■ The defendant raises the issue as to whether the award given to the defendant by the ALJ is res judicata, preventing the claimant from pursuing an additional award for the alleged mishandling of compensation payments. An examination of the relevant law convinces this court the earlier award is res judicata as to issues which were or could have been litigated at the formal LWHA hearing.

Though proceedings under workmen's compensation statutes are generally informal, and procedural rules governing them should be liberal, a final award is generally 'res judicata' except as the statute otherwise provides.

*Stansfield v. Lykes Bros. S.S. Co.,* 124 F.2d 999, 1004 (5th Cir.1942). There is no evidence that the statute itself provides for less than full res judicata effect, so this general rule will be applied barring unusual circumstances.

Jackson asserts there should be no res judicata from the previous ruling because he has not had the opportunity to litigate the disputed issues of fact, in effect contending that this is an unusual circumstance which removes the case from the statement of the law set out above. However, Jackson had the opportunity and did fully litigate the disputed issues of fact. After hearing the argument of counsel, the ALJ awarded the defendant compensation, attorney's fees and interest. These benefits and penalties are only available if the plaintiff wrongfully withheld payment of the benefits. 33 U.S.C. § 938(a) and (b). Having ruled that the plaintiff was wrong in withholding benefits, res judicata precludes a trial based on the same issue. The fact that the defendant did not and possibly could not assert the various theories and request the remedies which he now propounds in state court does not alter the fact that he has already fully litigated the issue of wrongful withholding of compensation payments, nor that he received a judgment for damages based on that very issue.

■ The court recognizes that the doctrine of res judicata does not apply to issues that were decided but were not properly within the jurisdiction of the administrive agency. *United States v. Radio Corporation of America,* 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959). However, under § 38 of the LHWCA, the matter of the wrongfulness of the plaintiff's withholding of benefits was properly before the ALJ, and was within her jurisdiction.

The defendant contends that *Martin v. Travelers Insurance Co., supra,* implicitly holds that a cause of action for mishandling compensation payments is not available under the LHWCA. This court reads that case to stand for the opposite conclusion. In *Martin* the cause of action arose under the Act,[15] and only an indepen-

---

**15.** The very first sentence of *Martin* sets forth this premise in as many words. Additionally, that court stated "whether the insurer's actions, if proven, give rise to a separate cause of action under state law, or upon some other theory, against the insurer is not a question we presently can answer." This statement does little to

dent remedy was allowed. Since this matter was properly before the ALJ and was fully litigated and properly decided, the award precludes relitigation of that same issue in state court, even if the theories of recovery asserted and remedies sought are different.

### III. THE INJUNCTION

The Anti-Injunction statute states that a court of the United States "may not grant an injunction to stay proceedings in a State court except when expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[16] A federal court may not enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 294, 90 S.Ct. 1739, 1746, 26 L.Ed.2d 234 (1970). However, a federal court may enjoin state proceedings which are precluded under the doctrine of res judicata. *Donelon v. New Orleans Terminal Company* 474 F.2d 1108, 1114 (5th Cir.1973). The relitigation exception also permits a federal court to enjoin relitigation in a state court of issues already decided in federal litigation. *Mitchum v. Foster*, 407 U.S. 225, 235, 92 S.Ct. 2151, 2158, 32 L.Ed.2d 705 (1972). For the purposes of this action, a determination by the ALJ is a final decision resulting from federal litigation.

Not only does this case fall under the "necessary to protect or effectuate judgment" clause as discussed above, but it also is within the "expressly authorized" exception to the anti-injunction statute. In *Mitchum v. Foster, supra*, the Supreme Court ruled that in order to qualify for this exception, a federal law need neither contain an express reference to the statute nor expressly authorize an injunction of the state proceeding. The law, however, must create "a specific and uniquely federal right or remedy enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state proceeding.[17]

§ 21(d) of the LHWCA shows that the federal rights and remedies contained in the Act are enforceable in a federal court of equity. The issue then becomes whether the federal rights and remedies can be given their intended scope only if a federal court has the power to stay state proceedings. This court has already discussed how Congress intended to mandate expedited recovery with minimal legal entanglements when it enacted the LHWCA, and how the Act was to provide a uniform compensation scheme for protected employees. Both these purposes could be frustrated if the federal courts could not enjoin state proceedings. But the most convincing support for allowing a federal court to stay such proceedings is found in § 5 of the Act. The LHWCA could hardly be considered the exclusive remedy for covered employees if the employee is free to pursue other remedies in state court for denial of the same federally granted rights. It is apparent that the LHWCA can be given its intended scope only if a federal court has the power under the Act to enjoin state proceedings.

The defendant finally urges the court to exercise its discretion and abstain from interfering with the state proceedings. Though federal courts are, reluctant to use their injunctive power to stay state proceedings, they certainly have the power to do so. In *Wall v. American Optometric Association, Inc.*, 379 F.Supp. 175, 183–83 (N.D.Ga.1974), aff'd 419 U.S. 888, 95 S.Ct. 166, 42 L.Ed.2d 134 (1974), it was held that "abstention ... is left in the discretion of the district court ... and should be exercised only in those rare cases in which the district court believes it would further the goals of federalism without interfering

---

support defendant's contention that the cause of action in tort arose under state law.

**16.** 28 U.S.C. § 2283.

**17.** *Mitchum v. Foster, supra*, pp. 237–38, 92 S.Ct. pp. 2159–60.

with Congress' intention to provide a federal forum for the vindication of federal rights." Under this formulation, abstention is not proper in this case because by abstaining this court would be ceding exclusive federal jurisdiction to a state court. This would in no way further federalism in that the deliberate delineation of federal and state powers would be breached with no commensurate benefits. To abstain would certainly interfere with Congress' intent to have a federal forum decide controversies concerning federal rights.

Accordingly, this court holds that Congress has pre-empted the entire field of compensation awarded under the LHWCA, that the award granted by the ALJ is res judicata as to the issue of wrongful handling of compensation benefits, that the defendant is permanently enjoined from proceeding on these matters in state court, and that federal abstention is not proper in this case.

IT IS SO ORDERED.