**Billie J. ATKINSON, Plaintiff,**

v.

**GATES, McDONALD & COMPANY, Defendant.**

**Civ. A. No. E86–0078(L).**

United States District Court, S.D. Mississippi, E.D.

July 22, 1987.

Joe Clay Hamilton, David Linder, Meridian, Miss., for plaintiff.

Kenneth Watts, Eppes, Watts & Shannon, Meridian, Miss., Robert J. Kent, McCutchan, Schmidt & Druen, Columbus, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on motion of defendant Gates, McDonald and Company (Gates McDonald) to dismiss or for summary judgment. Plaintiff Billie J. Atkin-

son timely responded to the motion and the court has considered the motion and memoranda of authorities together with attachments submitted by the parties.

This action is one in which the plaintiff, a compensation claimant under the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (1986) (LHWCA), seeks to recover compensatory and punitive damages against defendant arising out of the latter's alleged bad faith handling of her compensation claim. Defendant Gates McDonald has at all relevant times administered a self-insurance fund maintained by the Navy Resale Services Support Office (NAVRESSO), plaintiff's employer at the time of her injury. Plaintiff alleges that she sustained a work-related injury on May 20, 1980 while working at the United States Navy Exchange, Naval Air Station, Meridian, Mississippi. Defendant paid disability benefits to Atkinson from the date of her injury through May 31, 1984, when it terminated compensation payments based apparently on its determination that she was no longer disabled.[1]

Plaintiff asserts that she was never notified by defendant of the termination of benefits, and when it became clear to her that her benefits had in fact been terminated, she attempted on numerous occasions to determine the reason for the discontinuance of benefits but was unsuccessful in her efforts. Thereafter, on March 19, 1985, Atkinson filed an employee's claim for compensation before the United States Department of Labor as provided under the LHWCA. The Department notified Gates McDonald by mail on March 28 that the claim had been filed. The notice from the Department of Labor instructed defendant that should it choose to controvert plaintiff's claim, it should so notify the deputy commissioner of the Department of Labor, and if liability was not controverted, defendant should pay compensation and furnish medical treatment to plaintiff. When Gates McDonald did nothing in response to

---

**1.** It is uncontested that on May 2, 1984, an employee of Gates McDonald scheduled an appointment for Atkinson to be examined by Dr. William E. Bowlus on May 21, 1984. On May 31, after the examination, Gates McDonald was

informed by Dr. Bowlus' secretary that Atkinson had a 15% permanent partial disability to the body as a whole and that she was able to do light duty work.

this notice, the Department of Labor in December of 1985 directed that defendant respond to plaintiff's claim and informed defendant that if compensation had been discontinued, it should submit to the Department a notice of final payment or suspension of payment. Again, defendant did nothing until finally, on January 22, 1986, Gates McDonald reinstated plaintiff's disability benefits upon order of the Department of Labor. In addition, NAVRESSO was instructed to bring benefits up to date and to pay a ten percent penalty thereon together with attorney's fees. Accordingly, Gates McDonald paid plaintiff back benefits, a ten percent penalty on those benefits and attorney's fees. According to defendant, compensation benefits continue to be paid and are current.

Plaintiff brought the present action against Gates McDonald after reinstatement of benefits and payment of past due benefits, seeking compensatory and punitive damages for bad faith handling of her claim. Her claim is premised upon a tortious breach of contract, alleging that defendant owed her a duty of good faith and fair dealing which was breached by its failure to pay disability compensation and medical benefits during a time when plaintiff was clearly entitled to payments, May 31, 1984 to January 22, 1986. She further maintains that Gates McDonald "willfully, intentionally, wrongfully and in bad faith" used the fact of unequal wealth and bargaining position to effect economic gain for itself and intentionally caused her to suffer anxiety, worry, mental and emotional distress and other incidental damages. The issue presented on this motion is whether plaintiff's claims are cognizable under the LHWCA.

NAVRESSO is a nonappropriated fund activity which is an instrumentality of the United States.[2] Liability of NAVRESSO for compensation for injury or death of its employees is governed by the Nonappropriated Fund Instrumentalities Act, 5 U.S.C. § 8171 *et seq.* (1980), which extends the coverage of the LHWCA to employees of nonappropriated fund instrumentalities. *See* 5 U.S.C. § 8171. The Nonappropriated Fund Instrumentalities Act provides for compensation and medical benefits for disability or death resulting from injury occurring to employees of nonappropriated fund instrumentalities. *Id.* The available benefits however are determined by reference to the LHWCA. *See id.* Under the LHWCA every employer within the Act's coverage, including nonappropriated fund instrumentalities, *see* 5 U.S.C. § 8171(b), "shall be liable for and shall secure the payment to his employees of the compensation payable under ... this title." 33 U.S.C. § 904. NAVRESSO, rather than making compensation available through the procurement of insurance coverage, was a self-insurer and maintained a fund for the purposes of paying compensation benefits to its employees. Gates McDonald contracted with NAVRESSO to administer that fund. The specific services to be provided by defendant under the contract with NAVRESSO included the following:

(a) administering and processing all workers' compensation claims filed by or on behalf of NAVRESSO employees;

(b) based on the facts of each claim, investigating, paying and settling each claim which is, without question, a valid workers' compensation claim and controverting claims which appear to be outside the scope of the Acts;

(c) review doctor's reports of injury or illness, consult with physicians to resolve medical questions, and review all medical bills prior to payment and determine whether they are reasonable and allowable under the Acts and if not, to recommend proper action; and

(d) to make payments on NAVRESSO's behalf from funds supplied by NAVRESSO, of compensation benefits, allowable and reasonable medical expenses, and any allocated claim expenses incurred on behalf of NAVRESSO.

The contract expressly recognized that liability of NAVRESSO is governed by the Nonappropriated Fund Instrumentalities

---

**2.** A nonappropriated fund instrumentality is one which is not funded by congressional appropriation. *United States v. Hopkins,* 427 U.S. 123 n. 2, 96 S.Ct. 2508 n. 2, 49 L.Ed. 361 (1976).

Act, which extends the benefits of the LHWCA to employees who are employed by NAVRESSO within the United States or who are citizens or permanent residents of the United States employed in foreign countries. Defendant agreed to abide by the provisions of those laws. Plaintiff asserts that the benefits of the contract executed by NAVRESSO and Gates McDonald apply to her and that defendant therefore owed her a duty of good faith and fair dealing. Even assuming that Atkinson occupies the position of a third-party beneficiary of the contract between NAVRESSO and Gates McDonald, it does not necessarily follow that defendant owed her a duty of good faith and fair dealing. Rather, the question is whether a cause of action for bad faith handling of her claim lies under the provisions of the LHWCA.

The Nonappropriated Fund Instrumentalities Act provides that coverage under the LHWCA is exclusive and in lieu of all other remedies against the instrumentality for covered injuries. 5 U.S.C. § 8173; *see also Johnson v. United States*, 600 F.2d 1218, 1221, (6th Cir.1979). The LHWCA also contains an exclusivity provision which provides that the liability prescribed under that Act "shall be exclusive and in place of all other liability" of an employer to the employee. 33 U.S.C. § 905.[3] In addition to the exclusivity provision, the LHWCA provides for the payment of a penalty for overdue installment payments payable without an award as follows:

> (e) if any installment or compensation payable without an award is not paid within fourteen days after it becomes due ... there shall be added to such unpaid installment an amount equal to 10 per centum thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed [that the claim will be controverted], or

unless such nonpayment is excused by the deputy commissioner after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

33 U.S.C. § 914.[4] For the following reasons, the court holds that the exclusivity provisions of both the Nonappropriated Fund Instrumentalities Act and the LHWCA, coupled with the penalty provision of section 914(e) of the LHWCA, operate to bar Atkinson's claims against defendant.

In *Sample v. Johnson*, 771 F.2d 1335 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986), an LHWCA compensation claimant attempted to assert a claim against his employer for wrongfully controverting his LHWCA claim. The court recognized his claim as nothing more than an allegation of the state law tort of intentional infliction of emotional distress, and concluded that plaintiff's claims were moot in view of the fact that benefits under the LHWCA had previously been paid. The court noted that even were the exclusivity provision of the LHWCA not read to bar a putative cause of action for wrongful refusal to pay, the penalty provision provided by the Act should serve the same purpose. *Sample,* 771 F.2d at 1347. The court in *Sample* did not conclude that an employee is in all cases precluded from maintaining a tort action against his employer in connection with the handling of a compensation claim under LHWCA. To state a claim, however, "the employee must, of course claim that the employer deliberately intended to injure him." *Id.* at 1346.

In the present case, as in *Sample*, plaintiff is asserting what are in essence state law claims for bad faith and intentional

---

**3.** This exclusivity provision contains certain exceptions, common to most workers' compensation laws, to the effect that if the employer fails to secure compensation, the employee or his representative may elect to claim compensation under the Act or to maintain an action at law or in admiralty for damages on account of such injuries or death.

**4.** In addition to the penalty provision relative to overdue installments of compensation payable without an award, the Act prescribes a 20% penalty if compensation payable under the terms of an award is not paid within 10 days upon becoming due, 33 U.S.C. § 914(f), and a civil penalty of $100 is provided in the event of failure to send notice of final payment to the deputy commissioner, 33 U.S.C. § 914(g).

infliction of emotional distress. While these claims may be cognizable under Mississippi law, the LHWCA is a federal act which provides specific federal statutory remedies. In a well-reasoned opinion, the United States District Court for the Eastern District of Texas adopted the position that the LHWCA has pre-empted state law regarding actions for bad faith handling of LHWCA claims and concluded that recovery against an insurance carrier was limited to that provided by the Act itself. *See Texas Employers' Assn. v. Jackson*, 618 F.Supp. 1316, 1322 (E.D.Tex.1985). The plaintiff in *Jackson* was an insurance carrier on a LHWCA compensation policy seeking a determination that the manner in which LHWCA claims are handled is exclusively controlled by the LHWCA and further seeking a permanent injunction against Jackson, an LHWCA claimant, from asserting and prosecuting claims against it in a state court. Jackson's claims were for, *inter alia*, bad faith claims practices under Texas state law and both intentional and negligent infliction of emotional distress. In concluding that the language of the exclusivity provision was a sufficiently explicit basis to pre-empt conflicting state law, the court made several observations which are pertinent here:

> One of the apparent objectives of Congress in enacting the LHWCA was to provide uniform protection to certain classes of employees. This purpose would be hampered if every state were able to freely amend the Act and require varying standards of conduct by the parties.
>
> Another apparent objective of Congress was to provide an expedited procedure to enable the covered employees to recover adequate compensation with minimum legal entanglements. The employee has an easier burden to establish liability, and the employer and its carrier are protected from actions from outside the scope of the LHWCA.

*Jackson*, 618 F.Supp. at 1319–20. Having concluded that state law was pre-empted, the court next determined that under the LHWCA no cause of action was available

for bad faith handling of LHWCA claims, stating as follows:

> Congress intended that the LHWCA supercede any conflicting state law regarding the handling of claims and payments under the Act. *The LHWCA does provide remedies for late payment and non-payment of installments, but does not distinguish between good faith and bad faith non-payment.* The only allowable justification for non-payment of an installment is that there is no liability. ... A carrier's good faith belief that it is not liable under the LHWCA is not sufficient grounds to protect it from the penalties provided for if liability is later found. *The Act also provides no requirement that good faith be exercised controverting a claim or delaying payment thereon. Good faith simply does not play a part in the LHWCA scheme as far as the controverting of claims. In pre-empting state law in this area, Congress has set aside state causes of action for bad faith claims handling.*

*Id.* at 1320. *Cf. Lauzon, III v. Strachan Shipping Co.*, 782 F.2d 1217, 1222 (5th Cir.1985) (no exception under penalty provision of LHWCA for late payment for equitable reasons); *Director v. Cooper Associates, Inc.*, 607 F.2d 1385, 1389 (D.C.Cir. 1979) (good faith irrelevant to determination whether ten percent penalty on late compensation payments would be imposed under LHWCA penalty provision).

Atkinson contends that since the injury for which she seeks relief did not arise out of and in the course of her employment, the exclusive liability provisions of the LHWCA and Nonappropriated Fund Instrumentalities Act cannot operate to bar her claims. As stated, under the LHWCA compensation is payable to employees on account of injury. Injury is defined as "accidental injury or death arising out of and in the course of employment." 33 U.S.C. § 902(2). Plaintiff argues that the injury complained of herein did not arise out of and in the course of her employment relationship with NAVRESSO since her employment had terminated at the time of defendant's alleged tortious conduct. The court is compelled to conclude otherwise.

The Act by its terms contemplates nonpayment or delay in payment of benefits and provides claimants a remedy for such nonpayment in the form of a penalty. While injuries resulting from nonpayment may not "arise out of" the employment in the strictest sense, the Act nevertheless provides redress. Congress, in enacting the penalty provision, must have contemplated that when payments are delayed, emotional or mental distress might result as well as financial harm. And, "[w]hile Congress did not expressly preclude the creation of a [federal] common law remedy for wrongful [nonpayment], the remedies it has made available for use against employers who act in bad faith" [i.e., the penalty provisions], *Sample,* 771 F.2d at 1346, evidence an intent to limit redress for wrongful nonpayment to those specifically provided. Since the Act itself provides not only for payment of benefits, but also for redress in the event of nonpayment of benefits, and further does not distinguish between good faith and bad faith nonpayment of benefits, the apparent intent of the Act is that the penalty provisions provide the exclusive remedy for late payment or nonpayment of benefits.[5]

Of the courts that have considered the specific issue presented, most have concluded that the exclusivity provision of the LHWCA precludes any claim by an employee against his employer for bad faith, absent a specific or deliberate intent by the employer to injure the employee. *See Houston v. Bechtel Associates Professional Corp.,* 522 F.Supp. 1094, 1096–97 (D.C. D.C.1981) (exclusivity provision of LHWCA bars action both for compensatory and punitive damages; plaintiff's allegations of

willful, wanton, reckless and unlawful misconduct insufficient to overcome exclusive liability mandate of LHWCA); *Austin v. Johns Manville Sales Corp.,* 508 F.Supp. 313, 316–17 (D.C.Maine 1981) (nothing short of specific intent to injure falls outside scope of exclusivity provision of LHWCA); *cf. Hall v. C & P Telephone Co.,* 793 F.2d 1354, 1359–60 (D.C.Cir.1986) (injured employee's action against employer for intentional infliction of emotional distress and bad faith refusal to timely make workers' compensation payment barred by exclusive liability provision of LHWCA despite allegation of specific intent to injure). The case of *Martin v. Travelers Insurance Company,* 497 F.2d 329 (1st Cir.1974), in which the court allowed a claim against an insurance company in connection with its claims handling under the LHWCA, has been recognized as a case in which the employer's conduct toward its employee was "conspicuously contemptible." *See Sample,* 771 F.2d at 1347. There, the claimant brought suit after the insurer had stopped payments on drafts already issued to cover an award of compensation. Thus, the court concluded that the carrier's usual immunity from tort suit was not available. In *Martin* however, there was more than mere delay or omission by the carrier, as the defendant engaged in outrageous activity, apart from the delay, which the court found justified allowing the claim.[6] Unlike *Martin,* the instant case presents a claim for damages resulting only from delay and inaction. The only injury alleged by plaintiff is attributable to her failure to secure medical and compensation benefits in a timely fashion. Although she may have been deprived for a period of time of mon-

---

5. The court in *Jackson, supra,* aptly noted that Congress, in 1984, amended 33 U.S.C. § 931(c) of the LHWCA by adding a bad faith clause to impose a penalty in the form of a fine or imprisonment, or both, against an employer or his agent for knowingly and wilfully making a false statement or representation for the purpose of reducing, denying or terminating benefits to an injured employee. The penalty provisions of section 914 were left unchanged. This, in the court's opinion, indicates "that Congress was aware of bad faith actions by the parties and intended to control them through the LHWCA." *Jackson,* 618 F.Supp. at 1320 n. 9.

6. *Martin* has been criticized for its holding that a claim was stated at all. *See Jackson,* 618 F.Supp. at 1321, wherein the court said:

This court does not find *Martin* persuasive on several grounds. That case appears to be alone in its conclusion as to the pre-emptive effect of the LHWCA. Not only is there no authority in the text of the opinion which supports the conclusion, but the case appears not to have been cited as authority by any other federal court.

ey which she "desperately needed," there is no allegation of outrageous conduct which caused harm to her, and clearly no allegation of any specific or deliberate intent by defendant to cause her harm.

The exclusive liability provision of the LHWCA applies to the "employer." Plaintiff asserts that since defendant is not an employer, it is not immune from suit. The cases appear to be in agreement that an insurance carrier is shielded from liability to the same extent as is an employer covered by the LHWCA. *See Jackson*, 618 F.Supp. 1316, 1319 (E.D.Tex.1985) (insurance carrier in same position as employer under LHWCA for purposes of exclusive liability provision); *Johnson v. American Mutual Liab. Ins. Co.*, 559 F.2d 382, 390 (5th Cir.1977) (LHWCA explicitly immunizes employer from liability for damages and impliedly so immunizes insurance carrier). Gates McDonald, however, is not an *insurance carrier*. Rather, it is a servicing company or administrator of NAVRESSO's self-insurance fund. Its function includes administering and processing all workers' compensation claims, investigating, paying and settling claims which are unquestionably payable and controverting claims which appear to be outside the scope of the LHWCA. As a claims administrator or servicing company, Gates McDonald is not an insurance company or carrier in the traditional sense. Nor is it in the business of insuring. However, in the court's opinion, the "question of, whether or not [defendant] is technically an 'insurance company' presents a needless exercise in semantics. For all practical purposes, this [defendant] is involved in the business of insurance." *Birkenbuel v. Montana State Compensation Ins. Fund*, 687 P.2d 700 (Mont.1984) (defendant fund argued it was not subject to duty of good faith since it was not private insurance company; court held irrelevant). The court's decision in this case does not hinge upon a determination of whether defendant is an insurance

carrier or simply an independent claims administrator or servicing company. As a practical matter, the distinction between the two is of little or no significance on the issue of whether a cause of action lies against this defendant. While Gates McDonald does not actually pay claims under a policy of insurance, its functions are substantially the same as those of an insurance carrier. The court is therefore of the opinion that this defendant, for purposes of the exclusivity provision of the LHWCA, occupies a position analogous to that of an insurance carrier which is shielded from liability to the same extent as an employer.[7]

Absent outrageous, reprehensible or particularly egregious conduct on the part of the employer or carrier, a claim should not lie. The penalty provision, as the court concluded in *Sample*, should serve the same purpose as an action for wrongful refusal to pay, and only in the most egregious circumstances should the penalty provision not represent the employer's exclusive liability. And,

> [w]hile it may be that the penalty provisions are inadequate to fully compensate a worker who has been harmed by an employer for refusal to pay when due, the problem requires a political solution.

*Sample*, 771 F.2d at 1347 (citing *Goetz v. Aetna Casualty and Surety Co.*, 710 F.2d 561, 564 (9th Cir.1983)).

Because the court is of the opinion that plaintiff's claim could not be asserted against NAVRESSO, it follows that liability against Gates McDonald is likewise precluded by 33 U.S.C. § 905 and 33 U.S.C. § 914, the exclusivity and penalty provisions of the LHWCA, and 5 U.S.C. § 8173. In the court's opinion, the delay penalty provision of the LHWCA contemplates that the intentional tort of bad faith will be expiated by payment of the penalty. To allow an independent common law action

---

**7.** Defendant herein attempts to liken itself to an independent adjuster which, under Mississippi law, owes no duty of good faith and fair dealing to a compensation claimant. The court does not accept this position, for a servicing company like Gates McDonald does more than merely adjust claims. It makes the ultimate decision of whether a claim should be paid or controverted. An adjuster, on the other hand, investigates, reports findings and perhaps suggests a course of action for the carrier. But he typically does not make the final decision.

under the circumstances of this case would circumvent the intent of Congress and of the Act, and should not be allowed. The proper remedy for plaintiff is the penalty provision of the Act, and inasmuch as the penalty provided has been previously paid, the court is of the opinion that defendant's motion for summary judgment is well taken and should be granted.[8]

A separate judgment shall be submitted in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

8. Defendant also asserts an entitlement to dismissal on statute of limitations grounds. The court finds it unnecessary to reach this issue as a result of its disposition of this case.