Louis W. MARTIN and Mary L. Martin,
Plaintiffs, Appellants,

v.

TRAVELERS INSURANCE COMPANY,
Defendant, Appellee.

No. 74–1033.

United States Court of Appeals,
First Circuit.

Argued April 4, 1974.

Decided May 23, 1974.

Patrick N. McTeague, Brunswick, Me., with whom Ranger McTeague & Higbee, P. A., Brunswick, Me., was on brief, for plaintiffs, appellants.

Lawrence P. Mahoney, Portland, Me., with whom Mahoney, Robinson, Mahoney & Norman, Portland, Me., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is an action by a claimant under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, and his wife, against the insurer of his former employer for alleged misdeeds committed in connection with payment of compensation under the Act. According to the allegations of the complaint, plaintiff had received an award of compensation from the Bureau of Employees Compensation on June 19, 1973, and had received soon thereafter three drafts from defendant totaling $5,709.62, satisfying the award. But, about two weeks after the drafts had been deposited and substantially drawn upon by plaintiff, defendant stopped payment on the drafts, presumably because a decision had been made in the interim to appeal the adverse decision of the Bureau. This action by defendant is alleged by plaintiffs to have delayed payment in violation of the terms of the Act and to have subjected claimant to financial embarrassment due to the fact that he had written checks which had become worthless. Defendant allegedly was aware, or in the exercise of due care should have been aware, that plaintiff had a "grievous and life-threatening disease" which could be aggravated into "another . . . disabling attack" by the emotional upset flowing from a stopping of payment of the drafts. Resulting emotional distress is said to have caused claimant to suffer a "grievous attack" and severe physical impairment.

The complaint was dismissed by the district court pursuant to Fed.R.Civ. Proc. 12(b)(6) for failure to state a claim for which relief can be granted. An amended complaint, submitted to the court on the day set for hearing of the 12(b)(6) motion, was denied as not timely filed, but the court added that even if timely it too failed to state a claim. Defendant primarily relies for support of the ruling below upon the argument that the Longshoremen's and Harbor Workers' Compensation Act provides the exclusive mechanism for relief in this situation.

The exclusivity of the remedies provided in the Act is codified in section 905, which states in relevant part that "The liability of an employer prescribed in section 4 [33 U.S.C. § 904] shall be exclusive and in place of all other liability of such employer to the employee . . . and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . ." However, the instant claim for damages is not encompassed within the terms of this provision. Section 905 refers to the liability prescribed in section 904 which in turn states that an employer "shall be liable for and shall secure the payment to his employees of the compensation payable under sections 7, 8 and 9 [§§ 907–909 of title 33]." Sections 907 through 909 detail the amount of compensation payable. But the gist of the complaint in this case has to do instead with the manner and timing of payment, and the timing of payment is governed by an entirely separate section, section 914, which is not mentioned in any of sections 904 or 907–909 so as to bring it within the terms of the exclusivity provisions of section 905. And the matter of harm caused by withdrawal of payment is not mentioned anywhere in the Act.

Moreover, the exclusivity language of section 905 speaks in terms of liability "on account of such injury or death", and "injury" is defined in section 902 as "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment." The damage which is the basis of this suit did not arise out of or in the course of employment nor was the damage caused by a third person because of plaintiff's employment. Instead the damage was allegedly incurred in the course of and arising out of plaintiff's

status as a claimant seeking compensation, after his status as an employee had terminated. Finally, the protection of section 905 extends to an employer. Defendant is not his former employer but the insurer of the employer. The default complained of was the act of, and the responsibility of, the insurer-defendant, who is thus a real party in interest. Nothing in the Act extends the protection of section 905 to such a defendant. All of the above reasons indicate that section 905 does not extend to the instant case.

■ There remains the question whether the penalty for late payment provided in section 914(f) should be the exclusive remedy for resulting harm. This penalty amounts to twenty per cent of the payment due and is thus a not insubstantial compensation. But seemingly the crux of the complaint here is the insurer's callous stopping of payment without warning when it should have realized that acute harm might follow. A stop payment on a sizable compensation check which may have been deposited and drawn upon carries the obvious possibility of embarrassment and distress. Under the alleged circumstances the plaintiff who had received the check from what he considered to be a reputable corporation had little reason to suspect that a stop order would be lodged. Whether the insurer's actions, if proven, give rise to a separate cause of action in tort under state law, or upon some other theory, against the insurer is not a question we presently can answer.* But we are satisfied that plaintiffs are not precluded by the terms of the Longshoremen's and Harbor Workers' Compensation Act from pursuing whatever independent remedy may be recognized for such conduct.

Having decided the preclusion issue adversely to the defendant, we believe it appropriate to remand. It is not clear whether the trial court ever considered the remaining questions of law. Initial scrutiny of questions is normally the function of that court. Also the remaining issues are not presented in the kind of sharp focus which we would prefer. For example, while we have suggested that plaintiff's complaint centers around the issuance of a stop order, we may be misstating matters. It remains less than clear whether and to what extent plaintiff claims that his damages were caused by delay in effective compensation payment as distinguished from the stop payments themselves. Moreover, the question of intentional infliction of emotional distress appears to be entangled with the question of the untimeliness of the motion to amend the complaint. Although entirely proper, the prior decision to deny permission to amend may no longer be thought by the district court to bar amendment upon remand particularly if duplicitousness in litigation would thereby be avoided.

Remand will provide an opportunity for the district court and the parties to focus their attention upon the remaining issues without the distraction of the question of preclusion. Once it has achieved sufficient narrowing and sharpening of the questions, the district court will be free to proceed with the case or to dismiss if it concludes that there is no cause of action. If state law is unclear it may certify the question of a state claim to the state Supreme Court under 4 M.R.S.A. § 57 and Maine Rule of Civil Procedure 76B.

Remanded for further proceedings consistent herewith. No costs at this time.

---

* Plaintiff relies upon the tort theory creating liability for infliction of mental and emotional suffering recognized by the Maine Supreme Judicial Court in Wallace v. Coca-Cola Bottling Plants, Inc., 269 A.2d 117 (Me.1970). Alternatively, see generally, W. Prosser, Handbook of the Law of Torts §§ 129, 130 (4th ed. 1971) ; cf. Uniform Commercial Code § 4–402.