# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 13, 2015          Decided June 2, 2015

No. 13-7165

DANIEL BRINK, ET AL.,
APPELLANTS

v.

CONTINENTAL INSURANCE COMPANY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01733)

———

*Joshua T. Gillelan II* argued the cause and filed the briefs for appellants.

*Richard J. Doren* argued the cause for appellees. With him on the brief were *Geoffrey M. Sigler*, *Thomas M. Johnson*, *Holly P. Smith*, *Molly S. Carella*, *Christopher E. Appel*, *Roderick L. Thomas*, *Mark B. Sweet*, *Lawrence S. Ebner*, *Raymond B. Biagini*, *Tami L. Azorsky*, *Alejandro L. Sarria*, *David I. Ackerman*, *Kenneth Pfaehler*, *Avi D. Schick*, *Sandra D. Hauser*, *Leslie Paul Machado*, *Robert B. Wallace*, *David M. Ross*, *Matthew W. Carlson*, *F. Greg Bowman*,

2

*David Randall J. Riskin*, *Charles C. Platt*, *Dina B. Mishra*, *John B. Rudolph*, *Brannon C. Dillard*, *Tara M. Lee*, *Joseph C. Davis*, and *Sara Z. Moghadam*. *Timothy W. Bergin* and *Daniel P. Rathbun* entered appearances.

Before: GARLAND, *Chief Judge*, BROWN, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Appellant Daniel Brink, joined by thirty-one other individuals, brought a class action lawsuit stemming from the workers' compensation benefits owed to class members under the Defense Base Act, 42 U.S.C. § 1651 *et seq.*, for injuries suffered while working for United States government contractors in Iraq and Afghanistan. In connection with their Base Act claims, appellants alleged that several government contractors, insurance companies, and third parties (collectively "contractors") committed torts and violated the Longshore and Harbor Workers' Compensation Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Americans with Disabilities Act ("ADA"). The district court dismissed all of appellants' claims. We affirm the dismissal of appellants' class-wide tort claims as well their RICO and Longshore Act claims. This dismissal, however, does not preclude any individual appellants from bringing independent claims outside of the Base Act's statutory scheme. With respect to the ADA claims brought by three individual appellants, we remand to the district court to reconsider and explain its denial of leave to amend the complaint.

3

I.

Members of the plaintiff class suffered severe injuries. They lost limbs in massive explosions, suffered traumatic brain injuries from "concussive blasts, mortars, rockets, and bombs," and developed post-traumatic stress disorder after witnessing "gruesome scenes of carnage." Second Am. Compl. ¶¶ 12, 48, *Brink, et al. v. Xe Holding, LLC, et al.*, 910 F. Supp. 2d 242 (D.D.C. 2012) (No. 11-cv-01733) ("SAC"). Because they were injured while working "under contracts or subcontracts" with the United States government in Iraq and Afghanistan, appellants alleged that class members are covered by the Base Act. *Id.* ¶ 562.

Enacted in 1941, the Defense Base Act, 42 U.S.C. § 1651 *et seq.*, provides relief to employees of government contractors whose death or injuries occurred while accompanying military forces overseas. The Base Act builds upon and incorporates provisions of the Longshore Act, which was enacted to provide workers' compensation coverage to maritime employees. *See* 42 U.S.C. § 1651(a); 33 U.S.C. § 902(3). As with the Base Act, Congress passed the Longshore Act "to strike a balance between the concerns of [the employees] on the one hand, and their employers on the other." *Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs*, 461 U.S. 624, 636 (1983). "Employers relinquished their defenses to tort actions in exchange for limited and predictable liability," and employees accepted "limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail." *Id.* Both the Longshore Act and the Base Act contain exclusivity provisions stating that employer liability under the statutes "shall be exclusive and in place of all other liability." 33 U.S.C. § 905(a) (Longshore Act); 42 U.S.C. § 1651(c) (Base Act).

Appellants brought this action on behalf of themselves and an estimated 10,000 similarly situated workers, SAC ¶¶ 560–62, seeking $2 billion in damages as well as declaratory and injunctive relief to require the contractors "to comply with their legal obligations here and around the world, as to all past, present and future individuals who work in support of America's wars," *id.* ¶ 1. Appellants alleged the contractors "failed or refused to provide medical benefits owed to [them] under the [Base Act];" "cut off medical benefits;" delayed providing benefits; "made false statements and misrepresentations" regarding payment of Base Act benefits "while actually reducing, denying or ignoring [appellants'] medical needs;" failed to comply with orders to pay benefits; "threatened or discouraged workers from making [Base Act] claims;" and terminated appellants' employment "after they were disabled by their [Base Act]-covered injuries." *Brink*, 910 F. Supp. 2d at 247. Appellants asserted class-wide claims for discrimination and retaliatory discharge under the Longshore Act (Count I); violations of RICO (Count II); bad faith and tortious breach of the covenant of good faith (Count III); unconscionable, fraudulent, and deceptive trade practices (Count IV); civil conspiracy (Count V); violations of the ADA (Count VI); outrage (Count VII); and wrongful death (Count VIII). *See* SAC ¶¶ 564–631. In addition, appellants sought preliminary and permanent injunctive relief (Count IX). *Id.* ¶¶ 632–39.

The extensive factual allegations in the complaint include some assertions that could be predicates for independent legal claims, falling outside this class action. For example, Ronald Bell alleged that employees from Kellogg Brown & Root "intimidated and threatened" him and that he reported the assault to a local sheriff's department. *Id.* ¶ 79. Christine Holguin-Luge alleged she was sexually assaulted in Iraq.

*Id.* ¶¶ 321–35. Nicky Pool, the owner of a nursing care company, alleged that CNA Global Insurance "approved numerous medical treatments" but then refused to pay for them, causing her company to lose $200,000. *Id.* ¶¶ 351, 477–88. We note, however, that the complaint before us includes no separate counts or claims for relief for any of these individuals.

The contractors moved to dismiss appellants' second amended complaint in its entirety, and the district court granted the contractors' motions pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Relying on "this Circuit's binding precedent" in *Hall v. C&P Telephone Company*, 809 F.2d 924 (D.C. Cir. 1987) (per curiam), the district court concluded that appellants' "state law causes of action all arise out of their underlying claims to [Base Act] benefits and thus are barred by the exclusive scheme set forth in the [Base Act] and [Longshore Act]." *Brink*, 910 F. Supp. 2d at 249–50, 252 (dismissing Counts III, IV, V, VII, and VIII). The district court similarly held that the comprehensive statutory scheme barred appellants' RICO claims as well as their discrimination and retaliatory discharge claims arising under the Longshore Act, 33 U.S.C. § 948a. *Id.* at 254–56 (dismissing Counts I and II).

Three individuals—Merlin Clark, Harbee Kreesha, and Mohsen Alsaleh—alleged violations of the ADA. *Id.* at 256 (citing SAC ¶¶ 111, 113, 203, 215, 608–18). The district court "interpret[ed] these allegations as including two possible claims under the ADA: (1) failure to accommodate, and (2) disability discrimination for firing Plaintiffs." *Id.* at 256–57. Under either theory, the district court concluded that Clark, Kreesha, and Alsaleh failed to state a claim under the ADA. *Id.* at 258. The district court held that their allegations were "insufficient . . . to meet their burden of demonstrating

6

that their injuries substantially limited a major life activity and thus qualified them as disabled under the ADA." *Id.* Therefore, the district court dismissed their ADA claims (Count VI).

Appellants moved for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), and sought leave to file an amended complaint under Federal Rule of Civil Procedure 15(a) to correct the defects in their ADA claims. The district court denied both motions with prejudice. Appellants timely appealed.

## II.

On appeal, appellants raise three issues: (1) whether the statutory scheme bars appellants' tort claims; (2) whether the district court erred in dismissing appellants' federal claims; and (3) whether the district court abused its discretion when it denied the motion for leave to allow some of the appellants to amend their ADA claims. For the reasons discussed below, we conclude that the statutory scheme bars appellants' class-wide tort claims; the district court did not err in dismissing appellants' RICO and Longshore Act claims; and the district court abused its discretion by denying without explanation the motion for leave to allow some of the appellants to amend their ADA claims.

## A. Tort Claims

Appellants contend that neither the Base Act nor the Longshore Act bars their tort claims. In their view, the Base Act "does not extend tort immunity to intentional torts of the employer, the insurance carrier, or third parties." Appellants' Br. 20. Appellants also suggest their injuries, caused by the contractors' intentional post-employment acts, are not

covered by the Longshore Act because they are not "accidental." *See* 33 U.S.C. § 902(2) (defining the term "injury" as "accidental injury or death arising out of and in the course of employment"); *Martin v. Travelers Ins. Co.*, 497 F.2d 329, 330–31 (1st Cir. 1974).

We reject appellants' arguments. As previously noted, the statutory scheme represents a "legislated compromise between the interests of employees and the concerns of employers." *Wash. Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 931 (1984). In other words, "there is a quid pro quo." *Id.* "In return for the guarantee of compensation, the employees surrender common-law remedies against their employers for work-related injuries," while the employers gain "immunity from employee tort suits." *Id.* The statutory text codifies this legislative compromise by making statutory remedies exclusive. The Longshore Act provides:

> The liability of an employer prescribed in section 904 of this title *shall be exclusive and in place of all other liability* of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

33 U.S.C. § 905(a) (emphasis added). The Base Act expressly incorporates this exclusivity provision, *see* 42 U.S.C. § 1651(a), and includes an additional exclusivity provision. Under a subsection titled, "Liability as exclusive," the statute states:

> The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this

chapter *shall be exclusive and in place of all other liability* of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

42 U.S.C. § 1651(c) (emphasis added).

In the *Hall* decision we construed the District of Columbia Workers' Compensation Act, which, like the Base Act, incorporates the exclusive remedy provision of the Longshore Act. The plaintiff in *Hall*, "[u]nsatisfied with the statutory *quid pro quo*," contended that "employees should be permitted to bring tort claims when the employer refuses to make timely compensation payments with *an intent to injure*." 809 F.2d at 926 (emphasis added). We rejected Hall's argument and refused to undo the "legislated compromise" codified in the statutory scheme. *Id.* (quoting *Johnson*, 467 U.S. at 931). All the tort claims—including intentional tort claims—"fall within the [statutory] exclusivity provisions." *Id.*

As the district court rightly discerned, the reasoning of *Hall* governs this case. First, the complaint alleges that all class members "were covered by the Defense Base Act." SAC ¶ 562. Second, based on appellants' own allegations, their class-wide tort claims (including the alleged intentional torts) directly relate to their claims for Base Act benefits. *See id.* ¶¶ 59, 61; *Brink*, 910 F. Supp. 2d at 252 (summarizing appellants' claims). Consequently, appellants' class-wide tort claims are barred by the exclusive statutory scheme set forth in the Base Act and Longshore Act. *Hall*, 809 F.2d at 926;

*see also* Oral Arg. Recording 15:00–16:33 (acknowledging that *Hall* bars appellants' class-wide tort claims).

Appellants suggest that *Martin v. Travelers Insurance Co.*, a First Circuit case decided in 1974, identifies an exception to *Hall*. *See* Appellants' Br. at 43–44 (discussing *Martin*, 497 F.2d at 330–31). The First Circuit in *Martin* permitted a narrow exception to the Longshore Act's exclusivity because "the crux of the complaint [was an] insurer's callous stopping of payment without warning when it should have realized that acute harm might follow." *Martin*, 497 F.2d at 331. Appellants read *Martin* as creating an exception to exclusivity for intentional tort claims, and ask us to reverse the district court's dismissal because their class-wide tort claims were "clearly pleaded outside of the exclusive remedy setting." Appellants' Br. at 43. We disagree with appellants' broad reading of *Martin*. In fact, we implicitly rejected *Martin* in *Hall*. There we stated explicitly that the D.C. Court of Appeals had been "clearly correct" in *Garrett v. Washington Air Compressor Co.*, 466 A.2d 462 (D.C. 1983), in concluding that the tort claims before it "[fell] within the Act's exclusivity provisions." *Hall*, 809 F.2d at 926. In the citations following that conclusion, we suggested our rejection of *Martin* by introducing it with the negative "but see" signal. *Id.* We were not then, nor are we now, bound to follow the decisions of other circuits. We are, however, bound to follow those of our own. Therefore, as the appellants recognize, they must petition for rehearing en banc in order to make the case for narrowing or overruling *Hall*. And, whatever the scope of the First Circuit's *Martin* decision, *Hall* clearly encompasses intentional tort claims of the kind alleged in this class action.[1]

---

[1] We are not alone in declining to follow *Martin*. Other courts have done so, including even the First Circuit, which gave it birth

Appellants argue that the statutory scheme does not provide remedies for the tortious injuries caused by the contractors' intentional actions. That is incorrect. The Base Act penalizes employers for failing to pay (or timely pay) benefits. *See* 33 U.S.C. § 914(e), (f). If an employer fails to comply with a Department of Labor compensation order, federal courts have jurisdiction to enforce the compensation order, *id.* § 921(d), and assess criminal penalties, *id.* § 938. Additionally, the employer is criminally liable for knowingly making false statements to reduce, deny, or terminate benefits. *Id.* § 931(c). Even though some of these remedies sound in criminal law and not in tort, the statute provides remedy against contractors and insurers who do not comply with statutory obligations.

Appellants complain that the Base Act's "minuscule" penalties are provided by "a bureaucratic system of government administration . . . that is complex and slow," SAC ¶ 58, but that does not empower us to disturb the "legislatively enacted compensation scheme," *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 88 (1978). "While it may be that the penalty provisions are inadequate to fully compensate a worker who has been harmed by an employer's refusal to pay when due, the

---

but subsequently limited its application closely to its facts. *See Barnard v. Zapata Haynie Corp.*, 975 F.2d 919, 920–21 (1st Cir. 1992); *see also Sample v. Johnson*, 771 F.2d 1335, 1347 (9th Cir. 1985) (criticizing *Martin* as an "opinion free of citation to authority" and stating that the "bulk of authority" contradicts it); *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 813 n.6 (5th Cir. 1988) (deciding to "follow *Sample* and *Hall*" instead of *Martin*).

problem requires a political solution." *Sample*, 771 F.2d at 1347.

As the district court correctly opined, the precedent of *Hall* requires that we apply the exclusivity provision of the Longshore Act as incorporated in the Base Act according to the statutory terms. We affirm the district court's dismissal of appellants' class-wide tort claims (Counts III, IV, V, VII, and VIII).

We note, as the appellees acknowledge, that *Hall* does not preclude individual appellants from pursuing claims that arise independently of an entitlement to benefits under the Longshore Act, such as a common-law assault claim based on a threat against a Longshore Act claimant, *see* Oral Arg. Recording 34:15-35:15, or a claim by a Longshore Act care-provider sounding in contract and based on a separate agreement to make payments to her to provide care to the Longshore Act claimant, *see id.* 40:01-57. We reiterate that such claims are not encompassed in this class-action complaint. *See* SAC ¶¶ 564–639; Oral Arg. Recording 38:43-39:04, 49:29–50:25, 52:39–54. Therefore, our decision does not preclude separate proceedings for Ronald Bell to allege assault, SAC ¶ 79, Christine Holguin-Luge to allege sexual assault, *id.* ¶¶ 321–35, and Nicky Pool to allege a breach of contract, *id.* ¶¶ 351, 477–88.

## B. Federal Claims

### 1. RICO Claims

Because the statutory scheme of the Base Act and Longshore Act contains exclusive remedies, it "leaves no room" for appellants' RICO claims. *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1226 (D.C.

Cir. 1991). Appellants alleged the contractors violated RICO by conspiring "to misrepresent" information related to Base Act claims "to injured parties and the [Department of Labor]," and "by denying claims using fraud." SAC ¶ 573. The Base Act, however, already provides a remedy for the alleged misconduct. Titled "Penalty for misrepresentation," § 931 of the Longshore Act (which the Base Act incorporates) provides an exclusive remedy for false statements made by "an employer, his duly authorized agent, or an employee of an insurance carrier who knowingly and willfully makes a false statement or representation for the purpose of reducing, denying, or terminating benefits to an injured employee, or his dependents." 33 U.S.C. § 931(c). The violator "shall be punished by a fine not to exceed $10,000, by imprisonment not to exceed five years, or by both." *Id.* These exclusive remedies leave no room for appellants' RICO claims.

Appellants further alleged the contractors violated RICO by conspiring to "delay payments to providers or to claimants" and to "stop payments on checks." SAC ¶ 573. However, § 914 of the Longshore Act, as incorporated by the Base Act, already provides a penalty for employers who do not make on-time payments. *See* § 914(e)–(f) (increasing the amount due by 10 and 20 percent). Thus, there is no room for a RICO claim based on delayed or stopped compensation payments.

Even if the statutory scheme left room for appellants' RICO claims, the district court stated another ground for dismissing these claims: Appellants "fail[ed] to state a cause of action under RICO." *Brink*, 910 F. Supp. at 255 n.12. We agree. To state a RICO claim, appellants needed to allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001)

(citations and internal quotation marks omitted). Appellants' claims fail on the second element because they alleged an indeterminate "RICO enterprise of individuals" broadly consisting of "insurance companies, attorneys, adjusters, third party medical providers, third party case administrators, third party investigators and contractors." SAC ¶ 576 (emphasis omitted). Appellants did not allege any facts establishing required elements of a RICO enterprise: "(1) a common purpose among the participants, (2) organization, and (3) continuity." *United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999). Thus, they failed to allege a RICO enterprise.

Appellants also failed to plead predicate acts with particularity to satisfy Federal Rule of Civil Procedure 9(b). *See Danielson*, 941 F.2d at 1229. Neither appellants' mail nor wire fraud claims contain any reference to "specific fraudulent statements, who made the statements, what was said, when or where these statements were made, and how or why the alleged statements were fraudulent." *Brink*, 910 F. Supp. 2d at 255 n.12. Appellants' "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for Rule 12(b)(6), let alone Rule 9(b). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, we affirm the dismissal of appellants' RICO claims.

## 2. Longshore Act Claims

The Longshore Act prohibits an employer from discriminating against or discharging an employee who has filed (or attempted to file) a claim for compensation benefits. *See* 33 U.S.C. § 948a; 20 C.F.R. § 702.271(a)(1). Appellants alleged that the contractors violated the Longshore Act because they "discriminated against," SAC ¶ 565, and

terminated employees who filed claims, *id.* ¶ 567. Appellants sought "reinstatement or damages," *id.* ¶ 570, the same remedy available under the statute, *see* § 948a, as well as attorney's fees. However, the district court dismissed appellants' claims for failing to exhaust their administrative remedies. *Brink*, 910 F. Supp. 2d at 256.

We affirm the dismissal of appellants' Longshore Act claims. The Base Act incorporates the Longshore Act's administrative procedures for the filing, adjudication, and payment of workers' compensation claims. Appellants explained: "Th[e] [Base Act] system is administered according to statute by the United States Department of Labor (DOL), in the administrative Office of Workers' Compensation Programs (OWCP), subject to hearing and decision in contested cases by the Office of Administrative Law Judges (OALJ) of the DOL, and administrative appeal to the Benefits Review Board." SAC ¶ 2 (citing 33 U.S.C. §§ 919, 921(b)(3)). Only after "a matter works its way through the OWCP, OALJ, and [the] Board," can a claimant "appeal into the federal courts." *Id.* Appellants have not even attempted to comply with the statutory requirements. There is no evidence appellants followed the administrative process set forth in the statute and related regulations. *See* 33 U.S.C. § 948a; 20 C.F.R. §§ 702.271–274. In particular, there is no evidence that any appellants filed a complaint with the district director of the applicable compensation district, or that a district director conducted an investigation of the complaint. 20 C.F.R. § 702.271(b). Nor is there any evidence that the district director determined that discrimination occurred or recommended reinstatement, restitution, or compensation for lost wages. *Id.* § 702.272(a). Under these circumstances, dismissal is warranted because appellants have not exhausted their administrative remedies.

### 3. ADA Claims

As noted above, the district court ordered dismissal of the ADA claims and denied appellants' motions for reconsideration under Rule 59(e) and for leave to file an amended complaint under Rule 15(a). "When the district court denies a motion for leave to amend under Rule 15(a), we review its decision for abuse of discretion, bearing in mind that the rule is to be construed liberally." *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) (citation omitted).

Courts "should freely give leave" for a party to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). In light of the "liberal intent of Rule 15(a)(2)," appellants argue that the district court abused its discretion when it did not provide them leave to amend their ADA claims. Appellants' Br. 57–58. We agree.

Appellants could amend their complaint after it was dismissed with prejudice "only by filing, as they properly did, a 59(e) motion to alter or amend a judgment combined with a Rule 15(a) motion requesting leave of court to amend their complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). We have said that denial of the Rule 59(e) motion in that situation is an abuse of discretion if the dismissal of the complaint with prejudice was erroneous; that is, the Rule 59(e) motion should be granted unless "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Id.* at 1209 (internal quotation marks omitted); *see also Belizan*, 434 F.3d at 583 (same).

That high bar was not met here. "Turning . . . to the Rule 15(a) issue, we find error in the district court's complete failure to provide reasons for refusing to grant leave to amend." *Firestone*, 76 F.3d at 1209; *see also Foman v. Davis*,

371 U.S. 178, 182 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."). Moreover, although the contractors argue that the proposed amendment would have been futile, it is at least "plausible," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), that the severe injuries described by Clark, Kreesha, and Alsaleh could interfere with major life activities within the meaning of the ADA, 42 U.S.C. § 12102(2)(A); *see also Adams v. Rice*, 531 F.3d 936, 944 (D.C. Cir. 2008). Kreesha and Alsaleh also expressly allege that they sought the accommodation of doing translation work in the United States, and it again seems facially plausible that translating from home would be a "reasonable accommodation" under the ADA. 42 U.S.C. § 12111(9).

We therefore remand for the district court to reconsider and explain its decision to deny leave to amend. *See Belizan*, 434 F.3d at 584. The contractors do not resist this result. *See* Oral Arg. Recording 46:30–43 ("To the extent this court requires [the district court] to offer further explanation as to the three plaintiffs bringing ADA claims against three defendants, we defer to the court on that.").

\* \* \*

For the reasons stated, we affirm the district court's judgment dismissing appellants' class-wide tort claims as well

as appellants' RICO and Longshore Act claims.[2] We vacate the district court's denial of appellants' motion for reconsideration and leave to file an amended complaint, and remand to the district court to explain its decision not to grant leave to some of the appellants to correct the defects in their ADA claims.

*So ordered.*

---

[2] On February 10, 2015, Appellees US Investigations Services, LLC and USIS International, Inc. (collectively "US Investigations") notified this Court that US Investigations had filed a petition under chapter 11 of the Bankruptcy Code and that all judicial proceedings against the debtor are stayed under 11 U.S.C. § 362. Suggestion of Bankruptcy, *Brink, et al. v. Continental Insurance Co., et al.*, No. 13-7165 (D.C. Cir. Feb. 10, 2015). We ordered all parties except US Investigations to file responses. After reviewing the suggestion of bankruptcy and responses thereto, we held this case in abeyance as to US Investigations pending further order of the court.