# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 16, 2016          Decided March 9, 2018

No. 14-7009

DAVID SICKLE AND MATTHEW W. ELLIOTT,
APPELLANTS

v.

TORRES ADVANCED ENTERPRISE SOLUTIONS, LLC, ALSO
KNOWN AS TORRES AES, LLC AND SCOTT TORRES,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-02224)

---

*Scott J. Bloch* argued the cause and filed the briefs for appellants.

*Rachel Hirsch* argued the cause for appellees. With her on the brief was *A. Jeff Ifrah*.

Before: ROGERS, SRINIVASAN, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: The Defense Base Act, 42 U.S.C. § 1651, establishes a workers' compensation scheme for civilian government employees and contractors injured on

overseas military bases. This case addresses the preemptive reach of that scheme. Torres Advanced Enterprise Solutions terminated both Matthew Elliott's and David Sickle's contracts after Elliott sought workers' compensation benefits under the Defense Base Act, and Sickle medically documented Elliott's claim. Elliott and Sickle sued the company for breach of contract and common-law torts. We hold that the Defense Base Act preempts Elliott's tort claims because they derive from his efforts to obtain Defense Base Act benefits. The Act, however, does not preempt Sickle's claims or Elliott's contract claim because those injuries arose independently of any claim for workers' compensation benefits.

# I

## A

Congress enacted the Defense Base Act ("Base Act"), 42 U.S.C. § 1651, to provide workers' compensation benefits to civilian government and contracted employees stationed at overseas military bases, *id.* § 1651(a). The Act does so by extending to those employees key provisions of the workers' compensation benefit program established in the Longshore and Harbor Workers' Compensation Act ("Longshore Act"), 33 U.S.C. §§ 901 *et seq.*, and by broadly incorporating the terms and provisions of the Longshore Act "[e]xcept as herein modified." 42 U.S.C. § 1651(a).

In addition to providing a comprehensive compensation scheme for workplace injuries, the Base Act, via the Longshore Act, expressly prohibits retaliation against those who seek the statutorily authorized benefits. 33 U.S.C. § 948a; *see* 42 U.S.C. § 1651(a). The Longshore Act specifically provides that "[i]t shall be unlawful for any employer * * * to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or

attempted to claim compensation from such employer." 33 U.S.C. § 948a. The Longshore Act also prohibits retaliating in any way against an employee "because he has testified or is about to testify in a proceeding under this chapter." *Id.* Violators can be assessed penalties ranging from $1,000 to $5,000. *Id.* In addition, improperly dismissed employees may seek reinstatement and back-pay to the extent that they remain capable of performing their prior duties. *Id.*

In addition to its substantive provisions, the Base Act contains an exclusivity provision limiting the scope of an employer's potential liability to an employee who collects workers' compensation benefits. Specifically, the Act provides that the "liability of an employer * * * shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) * * *, under the work[ers'] compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into." 42 U.S.C. § 1651(c).

The Longshore Act contains a somewhat differently worded exclusivity provision, directing that "[t]he liability of an employer * * * shall be exclusive and in place of all other liability of such employer to the employee * * * on account of such injury or death." 33 U.S.C. § 905(a). The statute offers just one exception: "[I]f an employer fails to secure payment of compensation * * *, an injured employee * * * may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death." *Id.*

**B**

This dispute started at Forward Operating Base Shield in Baghdad, Iraq. In 2010, both Matthew Elliott and David Sickle

worked as subcontractors for Torres Advanced Enterprise Solutions ("Torres Solutions"), a military defense contractor providing security assistance to the United States Department of Defense and Department of State. Elliott worked as a kennel master for Torres Solutions, overseeing the base's canine unit. Sickle worked on site as a base medic. Both Sickle's and Elliott's employment contracts required Torres Solutions to provide twenty-eight days' notice in the event of a termination without cause. Alternatively, the agreements permitted either side to sever the contract for cause if, after thirty days' written notice, "the [c]ause remain[ed] uncured." J.A. 122, 133.[1]

On March 15, 2010, both Elliott and Sickle found themselves on "sandbag duty" in the kennel area. After lifting several heavy sandbags, Elliott felt a pop in his back followed by a sharp radicular pain running down his leg. Sickle, as the resident medic, examined Elliott and diagnosed his injury as a disc herniation. After that initial examination, Elliott resumed his duties as kennel master. But continuing pain sent him back to Sickle for care twice more in April. On both occasions, Sickle provided temporary treatment, but recommended that Elliott return to the United States for more advanced medical care. At the end of April, Elliott took Sickle's advice and returned to the United States to obtain further treatment for his back. Elliott was hopeful that he would be able to return to the base in mid-May to complete his contract assignment.

That hope was dashed after Torres Solutions learned that Elliott was seeking workers' compensation benefits under the Base Act for his back injury. On May 9th, one week before his planned return to the base, Elliott received an email from Scott Torres, the principal and owner of Torres Solutions, informing

---

[1] We take the facts in the light most favorable to Elliott and Sickle, as we must at this procedural stage. *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

him that he was no longer needed as base kennel master and, for that reason, would not be permitted to complete his contract term. That termination decision was made without affording Elliott the thirty days' advance notice required by the contract.[2]

Newly terminated, Elliott sought the continued payment of workers' compensation benefits under the Base Act, but his claim was rejected. On May 12, 2010, Elliott received a fax containing an undated medical note drafted by Sickle that described Elliott's injuries, Sickle's efforts at on-site treatment, and Sickle's recommendation that Elliott receive an MRI as soon as possible. Armed with that evidence and a lawyer, Elliott successfully obtained benefits under the Base Act and underwent spinal surgery in July 2010. According to Elliott, Torres Solutions represented to its insurance representatives that Elliott had falsified his benefits claim, and that was why the company had terminated his contract.

Meanwhile, on June 1, 2010, Matthew Sickle signed an additional one-year contract with Torres Solutions to continue his work as a base medic. According to Sickle, soon after signing this agreement, Torres Solutions' affiliates began to "threaten and intimidate" him, insisting that he recant his support for Elliott's workers' compensation claim. J.A. 128. Sickle refused, and Scott Torres sent him home for thirty days to "think things over." J.A. 19. When Sickle stuck to his guns, Torres Solutions terminated Sickle's contract. Like Elliott, Sickle's termination was abrupt, taking immediate effect without the contractually required thirty-day warning.

---

[2] Because Torres alleges it terminated Elliott for filing a false claim, we assume that it claims to have acted "for cause." If not, the contract requires twenty-eight days' notice, a warning period Elliott also did not receive.

## C

Elliott and Sickle jointly filed suit against both Scott Torres, individually, and Torres Solutions (collectively, "Torres").  Their amended complaint alleged that Torres had improperly discharged them in retaliation for Elliott's workers' compensation claim.  They asserted:  (1) discrimination and retaliatory discharge in violation of the Longshore Act, 33 U.S.C. § 948a, as incorporated into the Base Act, 42 U.S.C. § 1651(a); (2) breach of contract and the covenant of good faith and fair dealing under District of Columbia common law; (3) common-law retaliatory discharge for the filing of a workers' compensation claim; and (4) conspiracy and what the complaint called "prima facie tort" based on Torres's asserted "conspir[acy] with their insurance carrier * * * to commit the [alleged tortious] acts."  J.A. 23.

Torres moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The motion asserted that (i) the court lacked personal jurisdiction over Scott Torres, (ii) Elliott and Sickle had failed to state viable claims for relief because the Base Act preempted their common-law claims, and (iii) Elliott and Sickle failed to properly exhaust their Base Act claims.  Torres also argued that Elliott and Sickle had failed to allege facts plausibly supporting their common-law claims, and that District of Columbia law does not recognize a generalized cause of action for "prima facie tort."

The district court bypassed the question of personal jurisdiction and granted Torres's motion to dismiss for failure to state a claim.  *Sickle v. Torres Advanced Enter. Sols., LLC*, 17 F. Supp. 3d 10, 26–27 (D.D.C. 2013).  The court agreed that Elliott and Sickle had failed to exhaust their administrative remedies under the Base Act.  *Id.* at 20 (quoting 20 C.F.R. § 707.272(a)).  As for the common-law claims, the district

court found them preempted by the Base Act and the Longshore Act. *Id.* at 21–26.

Elliott and Sickle appealed, and the case then made a round trip journey from this court to the district court and back here again. In the first appeal, we held the case in abeyance pending this court's decision in *Brink v. Continental Insurance Co.*, 787 F.3d 1120 (D.C. Cir. 2015). Following that decision, we dismissed Elliott's and Sickle's statutory claims for retaliatory discharge under the Base Act and Longshore Act because they had not exhausted the necessary administrative remedies, as *Brink* required, 787 F.3d at 1128. *See Sickle v. Torres Advanced Enterprise Solutions, LLC,* 653 Fed. App'x 763 (D.C. Cir. 2016) (citing *Brink*, 787 F.3d at 1128). Having dismissed the sole federal claim in the case, we remanded to the district court to determine whether that court would exercise jurisdiction over the remaining common-law claims. On remand, Torres acknowledged the existence of diversity jurisdiction under 28 U.S.C. § 1332, and the district court agreed.

The parties have now returned, asking this court to decide whether the Base Act preempts Elliott's and Sickle's common-law tort and contract claims.

## II

We pause at the outset to address Scott Torres's assertion that the district court lacked personal jurisdiction over him because he lacks the requisite minimum contacts with the District of Columbia. Unlike subject matter jurisdiction, personal jurisdiction is a personal defense that can be waived or forfeited. *Insurance. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). At least for purposes of this appeal, Scott Torres has deliberately chosen not to brief or argue the question of personal jurisdiction,

stating instead that the personal jurisdiction "issue is not presently on appeal." Torres Br. 1. Accordingly, for purposes of this appeal, this court has personal jurisdiction over Scott Torres. *See Gilmore v. Palestinian Interim Self-Gov't Auth.,* 843 F.3d 958, 964–965 (D.C. Cir. 2016) (failure to assert a personal jurisdiction defense waives the objection); *see generally CTS Corp. v. EPA*, 759 F.3d 52, 61 (D.C. Cir. 2014) (argument forfeited where party made only "oblique" and "conclusory" statements in its opening brief).

## III

Torres argues that the Base Act preempts both Elliott's and Sickle's common-law tort and contract claims. Torres is partly right. Elliott's tort claims are squarely foreclosed because they arise directly out of his own application for workers' compensation benefits. But Elliott's contract claim turns on Torres's failure to provide the promised notice before termination for any cause and thus exists independently of the workers' compensation benefit process. As for Sickle, none of his contract or tort claims is preempted because each is divorced from any claim for benefits. Accordingly, we reverse the district court's dismissal of Elliott's contract claim and of all of Sickle's tort and contract claims, and we remand to the district court for further proceedings.

## A

We review *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *El Paso Natural Gas. Co. v. United States*, 750 F.3d 864, 874 (D.C. Cir. 2014).

A Rule 12(b)(6) motion tests the legal sufficiency of a claim or complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter * * * to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). In evaluating the sufficiency of a complaint, we "accept the plaintiff's factual allegations as true and construe the complaint liberally, grant[ing] plaintiff[] the benefit of all inferences that can [reasonably] be derived from the facts alleged." *Browning*, 292 F.3d at 242 (alterations in original; internal quotation marks and citation omitted). But the court will not credit "legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation omitted).

We note that, in dismissing the case, the district court was uncertain whether preemption under the Base Act and Longshore Act is a jurisdictional or merits-based barrier to Elliott's and Sickle's claims. *Sickle*, 17 F. Supp. 3d. at 15–16. To eliminate any further confusion in this area, we hold that preemption under the Base Act and Longshore Act is not jurisdictional. Rather, preemption forecloses a plaintiff from stating a legally cognizable claim for recovery. Preemption ordinarily is an affirmative defense forfeitable by the party entitled to its benefit. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit."); FED. R. CIV. P. 8(c) (affirmative defenses must be made in defendant's responsive pleading); *see also Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) ("[W]e hold that ERISA preemption in a benefits-due action is [forfeitable], not jurisdictional, because it concerns the choice of substantive law but does not implicate the power of the forum to adjudicate the dispute."); *Dueringer v. General American Life Ins. Co.*, 842 F.2d 127, 130 (5th Cir. 1988) (same); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir. 1986) (same).

Preemption under the Base Act and Longshore Act speaks to the legal viability of a plaintiff's claim, not the power of the court to act. *See Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) ("[T]he applicability of the [Base Act's] exclusivity provision, like the applicability of the [Longshore Act's] exclusivity provision, presents an issue of preemption, not jurisdiction. Federal preemption is an affirmative defense that a defendant must plead and prove" and is properly addressed under Federal Rule of Civil Procedure 12(b)(6), 12(c), or 56.).[3]

Notably, neither the Base Act nor the Longshore Act contains any indicia that Congress intended their exclusivity provisions to have jurisdictional force. Congress did not label those provisions as jurisdictional or otherwise indicate that the requirement of exclusivity stripped state or federal courts of

---

[3] *See also Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d. 458, 464 n.1 (3d Cir. 2013) ("Preemption arguments, other than complete preemption, relate to the merits of the case. Therefore, the appropriate procedural device for reviewing the § 2680(j) preemption argument is not a motion pursuant to Rule 12(b)(1), but rather a motion under either Rule 12(b)(6) or for summary judgment.") (internal citations omitted); *Trollinger v. Tysons Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004) ("Preemption, moreover, does not normally concern the subject-matter jurisdiction of a court to hear a claim, which is what is relevant to the resolution of a Rule 12(b)(1) motion. Rather, the doctrine generally concerns the merits of the claim itself—namely, whether it is viable and which sovereign's law will govern its resolution."); *see generally Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (concluding that the extraterritorial reach of the Securities Exchange Act "is a merits question," whereas subject matter jurisdiction "refers to a tribunal's power to hear a case.") (internal quotation marks and citations omitted); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

their authority to act.[4] In the absence of any such jurisdictional indicia, the Base Act's and Longshore Act's exclusivity clauses should be treated as substantive rather than jurisdictional barriers to relief. *See Morrison*, 561 U.S. at 254.[5]

**B**

**1**

The decision whether a federal law should preempt or operate alongside state law is Congress's to make. As a result, congressional purpose is "the ultimate touchstone in every preemption case." *Wyeth v. Levine* 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). The starting assumption, moreover, is that federal law does not override "the historic police powers of the States," absent the "clear and manifest" intent of Congress. *Arizona v. United*

---

[4] *See Gonzalez v. Thaler*, 565 U.S. 134, 141–142 (2012) (holding that courts should look to the "clear jurisdictional language" of the statute, if any, to determine whether or not a bar to litigation is jurisdictional (internal quotation marks omitted)); *Arbaugh*, 546 U.S. at 516 ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (noting that courts may consider "'context, including [the] Court's interpretations of similar provisions * * *,' as probative [evidence] of whether Congress intended a particular provision to rank as jurisdictional").

[5] *Cf. International Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 387–388 (1986) (indicating that preemption may be jurisdictional in the narrow context of a federal statute, like the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, that not only displaces state law, but also affirmatively ousts state courts of jurisdiction to even adjudicate the federal law claims).

*States*, 567 U.S. 387, 400 (2012) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947)).

Congress's preemption of state law can take two forms: express or implied.  *See Geier v. American Honda Motor Co.*, 529 U.S. 861, 884 (2000).  Express preemption arises when the federal statute itself announces its displacement of state law through "an express preemption provision." *Arizona*, 567 U.S. at 399.

Implied preemption supplants state law not through an explicit statutory provision, but through the substantive nature and reach of the federal regulatory scheme that Congress adopts.  *See Crosby v. National Foreign Trade Council*, 530 U.S. 363, 388 (2000) ("Because the state Act's provisions conflict with Congress's specific delegation to the President of flexible discretion" in managing the United States' relations with Burma, Massachusetts' law regulating state commerce with Burma "is preempted, and its application is unconstitutional, under the Supremacy Clause.").  Both field and conflict preemption are forms of implied preemption. *See Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1595 (2015) ("[E]ven where, as here, a statute does not refer expressly to pre-emption, Congress may implicitly pre-empt a state law, rule, or other state action * * * either through 'field' pre-emption or 'conflict' pre-emption."); *Waterview Mgmt. Co. v. Federal Deposit Ins. Corp.*, 105 F.3d 696, 700 (D.C. Cir. 1997) (distinguishing between express, field, and conflict preemption).

Field preemption will be found where "a framework of regulation" is "'so pervasive'" that it leaves no space for state supplementation, or where the federal interest is "so dominant" that the existence of a federal scheme can "be assumed to preclude enforcement of state laws on the same subject."

*Arizona*, 567 U.S. at 399 (comprehensive federal regime for alien registration preempts state regulation) (citation omitted); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504–505 (1988) (procurement of military equipment is an area of "uniquely federal interest" that preempts state regulation). Field preemption thus forecloses state regulation altogether in an area of law, such as alien deportation or nuclear safety regulation, irrespective of a state law's compatibility with the federal regime. *See Oneok*, 135 S. Ct. at 1595.

By contrast, conflict preemption—true to its name—exists when the operation of federal and state law clash in a way that makes "compliance with both state and federal law * * * impossible," or when "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Oneok*, 135 S. Ct. at 1595 (quoting *California v. ARC America Corp.*, 490 U.S. 93, 100 (1989)).

**2**

Applying those preemption principles here, we hold that the Base Act does not expressly preempt Sickle's or Elliott's tort or contract claims. The Act provides only that its workers' compensation benefit scheme "shall be exclusive and in place of all other liability of" employers and contractors to "employees (and their dependents) coming within the purview of this chapter, under the work[ers'] compensation law of any State, Territory, or other jurisdiction." 42 U.S.C. § 1651(c). Express preemption under that provision thus is limited to claims "under the work[ers'] compensation law of any State, Territory, or other jurisdiction." *Id.* Sickle's and Elliott's contract and tort claims do not fit that bill. They arise under the common law, not the District's statutory workers' compensation law. *See* D.C. CODE § 32-1501 *et seq.*

Our textual analysis cannot stop there, however, because *Brink* held that the Base Act also incorporates the exclusivity provision of the Longshore Act. *Brink*, 787 F.3d at 1125. That statute provides that the liability of covered employers "prescribed in section 904 * * * shall be exclusive and in place of all other liability of such employer to the employee" for the "recover[y] [of] damages from such employer at law or in admiralty on account of such injury or death." 33 U.S.C. § 905(a), *incorporated into the Base Act*, 42 U.S.C. § 1651(a).

While the Longshore Act's exclusivity provision is broader than the Base Act's, it still is not broad enough to *expressly* foreclose the tort and contract claims at issue here. That is because the Longshore Act makes exclusive an employer's liability as "prescribed in section 904" of the Longshore Act. 33 U.S.C. § 905(a). Section 904, in turn, makes employers liable for "compensation payable under sections 907, 908, and 909." *Id.* § 904. Respectively, those sections refer to: (1) medical treatment, *id.* § 907; (2) disability, *id.* § 908; and (3) death, *id.* § 909.

But Elliott's and Sickle's contract and tort claims do not seek to impose additional or further liability on Torres for medical treatment or ongoing disability, and certainly not for wrongful death. They seek only damages for breach of contract, retaliatory discharge, and conspiracy to commit those torts. To be sure, the Longshore Act covers retaliatory discharge. But it does so in Section 948a, a Section omitted from the Longshore Act's exclusivity provision.[6] Accordingly, none of Elliott's and Sickle's claims is expressly preempted.

---

[6] *Cf. Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 716 (1980) (holding that, even as to state workers' compensation regimes, the Longshore Act does not preempt claims arising from "land-based injuries").

**3**

Implied preemption is a different story.  This time we are not writing on a clean slate:  This court has already held that the Longshore Act's exclusivity provision impliedly precludes "common-law tort remedies against employers for work-related injuries."  *Hall v. C&P Tel. Co.*, 809 F.2d 924, 926 (D.C. Cir. 1987).  *Hall* explained that the Longshore Act established a "*comprehensive* scheme for compensating employees who are injured or killed in the course of employment."  *Id.* (emphasis in original).  Under the statute, "employees relinquish" any common-law tort claims in exchange for "the guarantee of a practical and expeditious statutory remedy" for their workplace injuries.  *Id.*  To allow separate common-law actions, we concluded, would unravel the calibrated compromise that Congress wove.  *Id.*

Then in *Brink*, we held that the Base Act embodies the same type of "legislated compromise"—a "quid pro quo" surrender of tort claims arising out of workplace injuries in exchange for an expeditious statutory remedy.  787 F.3d at 1125 (internal quotation marks omitted).  Accordingly, we held that the Base Act's exclusivity provision impliedly preempted state tort claims of conspiracy, bad faith, outrage, and wrongful death because those claims were "directly relate[d] to [the plaintiffs'] claims for Base Act benefits."  *Id.*

Implied preemption has its limits, however.  As *Brink* noted, the Act does "not preclude [individuals] from pursuing claims that arise independently of a statutory entitlement to benefits, such as a common-law assault claim," or a "breach of contract" claim "based on a separate agreement to make payments * * * to provide care."  787 F.3d at 1126 (citations omitted).

16

Under *Brink* and *Hall*, Elliott's tort claims are foreclosed because they would undo the legislated *quid pro quo* under which a benefits claimant like Elliott exchanges common-law tort litigation for the ease of expeditious and predictable recovery of the Base Act's statutory benefits. Elliott's tort claims relate to and arise directly out of his entitlement to and recovery of statutory workers' compensation benefits. His retaliatory discharge, conspiracy, and *prima facie* tort claims all address the same conduct: Torres's allegedly unlawful discharge of him in retaliation for filing a Base Act benefits claim. Part of the legislated compromise, however, is that the Base Act provides its own remedy for claims that an employer retaliated "because such employee has claimed or attempted to claim compensation from such employer." 33 U.S.C. § 948a. Allowing Elliott two bites at the retaliation apple would upset the balance that Congress struck.

Elliott objects that the Base Act's statutory remedies fall short because he is no longer "capable of performing" his pre-existing duties, which is a prerequisite for back-pay under the Act. 33 U.S.C. § 948a. But that argument just disagrees with how Congress balanced competing interests. Allowing employees to take Base Act benefits while escaping any Base Act limitation they find too confining would transform the give-and-take that Congress legislated into a take-and-take for employees.

Elliott also argues that implied preemption does not apply to "intentional" torts. Not so. *Brink* specifically held that the Base Act's preemptive bar "clearly encompasses intentional tort claims of the kind alleged" in this action. 787 F.3d at 1124, 1126.

The preemption answer is different for Sickle. Unlike Elliott, Sickle's tort claims arise "independently of an

entitlement to benefits" under the Base Act. *Brink*, 787 F.3d at 1126. Sickle was never physically injured on the job; he never had a Base Act claim to pursue; he neither sought nor obtained benefits under the Act; and he claims no "entitlement to benefits" under the statute. *Id.*

Neither does the Base Act's retaliation provision apply to Sickle. The Act only speaks to retaliation against an employee "because he has testified or is about to testify in a proceeding under this chapter." 33 U.S.C. § 948a. Sickle was not involved in or asked to testify in any matter, let alone in a "proceeding under this chapter." *Id.* Instead, Sickle was terminated simply because, according to his complaint, he truthfully documented Elliott's medical injuries. Nor could the preemption of Sickle's claims be chalked up to legislative compromise because Sickle was not a Base Act claimant and has no legal entitlement to such benefits. He thus never participated in any *quid pro quo*. As *Brink* explained, the Base Act's field of exclusive federal authority stops where the claims at issue "arise independently of an entitlement to benefits" under the Base Act. 787 F.3d at 1126; *see also Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 716 (1980) (holding that state workers' compensation schemes fall outside the Longshore Act's preemptive reach).

Torres argues that Sickle's filing of a medical report amounts to testimony "in a proceeding," for purposes of the retaliation provision. That wrenches the language of Section 948a out of context and strains its ordinary meaning. The statute speaks of testimony "in a proceeding *under this chapter*." 33 U.S.C. § 948a (emphasis added). The Longshore Act identifies the types of "proceedings" available under the chapter, and they are healthcare provider adjudications, *id.* § 907(j), settlement denials, *id.* § 908(i)(2), non-payment investigations, *id.* § 914(h), and claims adjudications, *id.* § 919(c). No such proceeding—or anything bearing any

logical resemblance to a "proceeding"— took place in this case.[7]

Common sense confirms the point. One would not reasonably think, for example, that a paramedic filling out paperwork in an ambulance or a doctor taking notes in a medical office is participating in an administrative "proceeding." *See generally* BLACK'S LAW DICTIONARY (8th ed. 1979) (defining "testimony" as "evidence given under oath or affirmation; as distinguished from evidence derived from writings, and other sources," and defining "proceeding" as "the form and manner of conducting juridical business before a court or judicial officer"); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (New College ed. 1976) (defining "testify" as "[t]o make a declaration of truth or fact under oath," and "proceeding" as "[l]egal action; litigation."); *cf. Norris v. Lumbermen's Mut. Casualty Co.*, 881 F.2d 1144, 1150 (1st Cir. 1989) (finding no preemption for retaliatory discharge claim because whistleblowing did not fall under "commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding," if no proceeding ever occurred).[8]

---

[7] Hearings conducted under the Longshore Act are held in accordance with 5 U.S.C. § 556. That subchapter defines an "agency proceeding" as a rulemaking, adjudication, or licensing. 5 U.S.C. § 551(12).

[8] *See also Sexton v. Panel Processing, Inc.*, 754 F.3d 332, 336 (6th Cir. 2014) (rejecting claim that an email sent complaining of a violation of ERISA constituted participation in "an inquiry" and thus fell within ERISA's anti-retaliation provision); *cf. Sasse v. Department of Labor*, 409 F.3d 773, 780 (6th Cir. 2005) (engaging in normal job duties is not considered protected activity under federal

In short, unlike Elliott, Sickle has not asserted any claim for or entitlement to workers' compensation benefits, and he has not participated in or been aided by the "legislated compromise" that the Base Act effectuates. *Brink*, 787 F.3d at 1124; *see also Washington Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 931 (1984). Accordingly, for all relevant intents and purposes, Sickle stands outside of the Base Act's benefits scheme, and his tort claims are untouched by the Act's preemptive reach.

Finally, the Base Act does not preempt either Elliott's or Sickle's contract claims. *Brink* recognized that claims of contractual liability that exist independently of a claim for benefits are not foreclosed. 787 F.3d at 1126. The only issue raised by the contract claims is whether Torres provided the required advance notice of termination, and resolution of that specific question has no bearing on either Elliott's or Sickle's entitlement to or recovery of workers' compensation benefits under the Base Act. Instead, that contract claim rises or falls on the language of the contract, which is completely untethered to Base Act eligibility. Put another way, the question of whether Torres provided the contractually required notice prior to terminating Elliott and Sickle has nothing to do with Elliott's receipt of benefits under the Base Act.

\* \* \* \* \*

The touchstone for implied preemption under the Base Act is a claim's nexus to the statutory benefits scheme. Because Elliott sought and obtained workers' compensation under the Base Act, his tort claims arising from that benefits process are preempted, but his independent claim of contractual injury is not. Sickle, for his part, never set foot into the Base Act's

---

anti-retaliation statutes); *Willis v. Department of Agric.*, 141 F.3d 1139, 1145 (Fed. Cir. 1998) (same).

regulatory arena, so both his tort and contract claims can proceed. Accordingly, we affirm the district court's dismissal of Elliott's tort claims (Counts III and IV of the Amended Complaint), but reverse as to Sickle's tort claims (Count III and IV of the Amended Complaint) and as to both Elliott's and Sickle's remaining contract claims (Count II of the Amended Complaint), and remand to the district court for further proceedings consistent with this decision.

*So ordered.*